# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PROFUSION INDUSTRIES, LLC, | ) | CASE NO. 5:16-cv-164 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CHEM-TEK SYSTEMS, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Presently before the Court is the motion of plaintiff ProFusion Industries, LLC ("plaintiff" or "ProFusion") for default judgment against defendant Chem-Tek Systems, Inc. ("defendant" or "Chem-Tek") pursuant to Fed. R. Civ. P. 55(b)(2) for trademark infringement, violation of the Lanham Act, and violation of the Ohio Deceptive Trade Practices Act. (Doc. No. 9 (Motion for Default Judgment ["Mot."]) at 54.[1]) ProFusion seeks injunctive relief pursuant to 15 U.S.C. § 1116, and money damages pursuant 15 U.S.C. § 1117.

For the reasons that follow, plaintiff's motion is granted in part and denied in part.

## I. BACKGROUND

In its complaint, plaintiff alleges that defendant has used the KOROSEAL® trademark in violation of two provisions of the Lanham Act (15 U.S.C. §1125(a) (§ 43(a) of the Lanham Act) and 15 U.S.C. § 1125(d) (§ 43(d) of the Lanham Act)), as well as Ohio's Deceptive Trade Practices Act. (Doc. No. 1 (Complaint ["Comp."]).) Defendant waived service of the summons

---

[1] All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

and complaint (Doc. No. 6), but then failed to file a responsive pleading or otherwise defend the lawsuit.

Default was entered against Chem-Tek on July 22, 2016. (Doc. No. 8.)[2] Once default is entered, the defaulting party is deemed to have admitted all of the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The following factual allegations from the complaint are deemed admitted due to defendant's default.

ProFusion is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business at 3875 Embassy Parkway, Fairlawn, OH 44333. (Compl. ¶ 1.) Chem-Tek is a corporation organized and existing under the laws of the state of New York, with its principal place of business at 38-D Otis St., West Babylon, New York 11704. (*Id.* ¶ 2.) This Court has jurisdiction over the claims for trademark infringement and violations of the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338,[3] and has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. (*Id.* ¶ 3.) Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b), and/or (c), and 28 U.S.C. § 1400(b) because a substantial part of the events giving rise to the claims occurred in this judicial district. (*Id.* ¶ 4.)

---

[2] A copy of the default entry was mailed by the Clerk of Court to defendant at defendant's address of record. There is no indication on the docket that this mail was returned as undelivered.

[3] Paragraph 3 of the complaint actually contains incorrect statutory citations; the Court is using the correct ones.

The B.F. Goodrich Company of Akron, Ohio ("Goodrich"), originally adopted the KOROSEAL® trademark for a variety of goods in 1939. These goods included synthetic elastomeric material sold in various forms, wall covers and matting for foot traffic, conveyor belting, flexible plastic tubing for surgical and clinical use, upholstery covers, impervious clothing and other applications. (*Id*. ¶ 5.) Goodrich registered several KOROSEAL® federal trademark registrations on the principal register of the United States Patent and Trademark Office ("USPTO"). (*Id*. ¶ 7.) On February 17, 1989, Goodrich assigned Federal Trademark Registrations 441,766 ("'766 Registration") and 441,953 ("'953 Registration") for KOROSEAL® to RJF International Corporation ("RJF"). On September 1, 1992, RJF received Federal Trademark Registration 1,711,712 ("'712 Registration") on the Principal Register of the USPTO for its KOROSEAL® trademark for "synthetic elastomeric material sold in web, sheet, flexible film, block or rod form for use in further manufacturing; or in permanent combination with another article in the nature of containers or conduits." Subsequent to the issuance of the '712 Registration, the '766 and '953 Registrations lapsed. (*Id*. ¶ 8.) Koroseal Interior Products, LLC purchased the '712 Registration from RJF on or about March 14, 2014. Koroseal Interior Products, LLC is the owner of the KOROSEAL® trademark. (*Id*. ¶ 9.)

ProFusion is the exclusive licensee of the KOROSEAL® trademark. (*Id*.) ProFusion develops and distributes authentic KOROSEAL® products, including liners that are used to prevent corrosion, abrasion, pitting, or other chemical or mechanical effects in metal, wood, concrete, fiberglass, polypropylene and polyethylene tanks and containments in many sizes and shapes. ProFusion has built significant goodwill in the KOROSEAL® trademark and continues to build upon that goodwill with its customers. ProFusion has successfully achieved the trust and confidence of its customers and built a solid reputation under the KOROSEAL® brand.

3

ProFusion has invested extraordinary financial resources and various talents to develop and market its KOROSEAL® products. (*Id.* ¶¶ 11-14.)

Chem-Tek is a company that provides plastic fabrication products, including flexible polyvinyl chloride ("PVC") liners, and is a competitor of ProFusion. Beginning January 24, 2013, Chem-Tek registered the domain name www.korosealliners.com to advertise and sell its products, including its competing PVC liners. Chem-Tek also uses the KOROSEAL® trademark on its webpage advertising both KOROSEAL® liners and its competing PVC liners. When customers contacted Chem-Tek to purchase KOROSEAL® products, Chem-Tek would direct customers to a competing liner product even when the customers specifically requested the KOROSEAL® liner. (*Id.* ¶¶ 15-18.) Chem-Tek obtained the www.korosealliners.com domain name knowing that the use and/or registration of such name would conflict with ProFusion's rights in the KOROSEAL® mark, and with the intent to use the domain name in a manner that would cause Chem-Tek to benefit improperly from the reputation and goodwill that ProFusion has developed in its KOROSEAL® products. (*Id.* ¶ 20.) Chem-Tek also advertised liners on several third-party websites using the KOROSEAL® trademark. (*Id.* ¶ 21.) Chem-Tek never requested or received ProFusion's approval to use the KOROSEAL® trademark in its website domain name or in connection with Chem-Tek's competing products. (*Id.* ¶ 22.) Chem-Tek has caused, and will continue to cause, consumer confusion and damage to ProFusion's goodwill and reputation with respect to its genuine KOROSEAL® products. (*Id.* ¶¶ 24, 28, 32.)

## II. DISCUSSION

**A. Default Judgment—Liability**

Federal Rule of Civil Procedure 55 governs default and default judgment. Default has been entered by the clerk against defendant Chem-Tek pursuant to Rule 55(a). (Doc. No. 8.)

After default has been entered, the Court may enter default judgment against the defendant with or without a hearing. Fed. R. Civ. P. 55(b). Based on the well-pleaded factual allegations in the second amended complaint, the Court concludes that there is a sufficient basis for determining defendant's liability without the need for a hearing.

Even though the well-pleaded factual allegations of the complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts are sufficient to state a claim for relief with respect to plaintiff's claims under the Lanham Act and Ohio's Deceptive Trade Practices Act for which the plaintiff seeks default judgment. *See J&J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted) ("The Court . . . must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment.").

**1. Claim 1—15 U.S.C. § 1125(a) (Unfair Competition)**

Plaintiff's first claim for relief alleges a violation of 15 U.S.C. § 1125(a). Section § 1125(a) provides that:

(a) Civil action

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The same test is used for trademark infringement and unfair competition—likelihood of consumer confusion. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos v. Taco Cabana*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)). Based upon the factual allegations in the complaint, which are deemed admitted, defendant has used the KOROSEAL® trademark in advertising, distributing and selling defendant's products in such a way as to cause confusion because (1) consumers are likely to believe that Chem-Tek's products originate from, are sponsored or approved by, or associated with ProFusion, the exclusive licensee of the KOROSEAL® trademark; or (2) are likely to mistake defendant's products for the genuine KOROSEAL® products offered for sale by the plaintiff. (Compl. ¶¶ 26-32.) Thus, defendant is liable to plaintiff for unfair competition under 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act.

Accordingly, plaintiff is entitled to default judgment with respect to its first claim for relief—violation of 15 U.S.C. § 1125(a).

**2. Claim 3—Ohio Rev. Code § 4165.02 (Deceptive Trade Practices)**

The analysis of an unfair competition claim under Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq*.,[4] is the same as for an unfair competition claim under the Lanham Act—likelihood of consumer confusion. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880-81 (S.D. Ohio 2007) (citing *ETW Corp. v. Jireh Publ'g, Inc*., 332 F.3d 915, 920 (6th Cir. 2003)) (additional citations omitted). Any person who is likely to be damaged or is damaged by a person committing a deceptive trade practice listed in Ohio Rev. Code § 4165.02(A) may commence a civil action to obtain injunctive relief and/or damages. Ohio Rev. Code § 4165.03(A)(1) and (2).

---

[4] Ohio Rev. Code § 4165.02 (Deceptive Trade Practices) provides, in relevant part:

> (A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>
>> (1) Passes off goods or services as those of another;
>> (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>> (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
>> (4) Uses deceptive representations or designations of geographic origin in connection with goods or services;
>
>> ****
>
>> (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>> (8) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
>> (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>> (10) Disparages the goods, services, or business of another by false representation of fact;
>> (11) Advertises goods or services with intent not to sell them as advertised;
>
>> ****

Based on the same admitted facts in the complaint upon which the Court found ProFusion entitled to default judgment against Chem-Tek with respect plaintiff's first claim for relief, the Court finds that plaintiff is also entitled to default judgment with respect to its third claim for relief—deceptive trade practices in violation of Ohio Rev. Code § 4165.01 *et seq*.

**3**. **Claim 2—15 U.S.C. § 1125(d) (Cyberpiracy)**

Section 15 U.S.C. § 1125(d) provides that:

> **(d) Cyberpiracy prevention**
>
> **(1)(A)** A person shall be liable *in a civil action by the owner of a mark*, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> > **(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > **(ii)** registers, traffics in, or uses a domain name that—
> >
> > > **(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > **(III)** is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d) (emphasis added).

Under the plain language of the statute, a person violating the provisions of 15 U.S.C. § 1125(d) is liable to the owner of the trademark in a civil action—only the owner of the mark has standing to sue under § 1125(d). The owner of the KOROSEAL® trademark is Koroseal Interior Products, LLC, who is not a party to this case. (Compl. ¶ 9.) The undisputed allegation in the complaint is that ProFusion is the exclusive licensee—not the owner—of the KOROSEAL®

trademark. (*Id*.) Because ProFusion is admittedly not the owner of the KOROSEAL® trademark, it lacks standing to bring a claim pursuant to 15 U.S.C. § 1125(d). *See Flu Shots of Texas, Ltd. v. Lopez*, No. 3:13-CV-144-O, 2014 WL 1327706, at *5 (N.D. Tex. Apr. 3, 2014) (plaintiff lacks standing to bring cybersquatting claim pursuant to 15 U.S.C. § 1125(d) because it is not the owner of the trademark).

Similar to § 1125(d)'s provision that only the "owner" of a trademark may bring a civil action under that section, 15 U.S.C. § 1114(1) provides that only the "registrant" has standing to sue for trademark infringement.[5] *Brimstone Recreation*, 2014 WL 4722501, at *3; *see also Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) ("[15 U.S.C. § 1114(1)] contrasts with Section 43 of the Act, which allows suits 'by *any person* who believes that he or she is or is likely to be damaged' by the defendant's actions. 15 U.S.C. § 1125(a)(1) (emphasis added)."). "The text of the Lanham Act and the majority of cases interpreting it only provide standing for owners or assignees to sue for infringement." *Brimstone Recreation, LLC v. Trails End Campground, LLC*, No. 3:13-CV-331-PLR-HBG, 2014 WL 4722501, at *3 (E.D. Tenn. Sept. 22, 2014), *on reconsideration in part,* No. 3:13-CV-331-PLR-

---

[5] **(1)** Any person who shall, *without the consent of the registrant*—

> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

> *shall be liable in a civil action by the registrant* for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1) (emphasis added).

HBG, 2015 WL 11170836 (E.D. Tenn. Apr. 22, 2015) (citing 6 McCarthy on Trademarks and Unfair Competition § 32.3 (4th Ed.)).

In some instances, an exclusive licensee may have standing to sue under the Lanham Act. *Brimstone Recreation*, 2014 WL 4722501, at *3 (citing *Wynn Oil Co. v. Thomas,* 839 F.2d 1183 (6th Cir. 1988)); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,* 339 F. Supp. 2d 944, 960–1 (W.D. Mich. 2004)). In such cases, however, the exclusive license must be tantamount to an assignment where the licensee stands in the shoes of the trademark owner. *See Bliss Clearing Niagara*, 339 F. Supp. 2d at 959–60 (discussing cases); *see also Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 72-75.

Applying this analysis to ProFusion's second claim for relief, Profusion is not entitled to default judgment on this claim. The complaint does not describe the nature of ProFusion's "exclusive license," nor is the license attached to the complaint. Plaintiff has advanced no affidavit or other evidence regarding its license with respect to the KOROSEAL® trademark. The admitted facts in the complaint do not establish that ProFusion's exclusive license is tantamount to an assignment, or that ProFusion's exclusive license, whatever form it may take, extends to ProFusion the right to pursue actions for trademark infringement or cybersquatting relative to the KOROSEAL® trademark. *See Bliss Clearing Niagara*, 339 F. Supp. 2d at 960. Thus, the admitted facts in the complaint are not sufficient to establish that ProFusion, as a licensee, has standing to pursue a claim pursuant to 15 U.S.C. § 1125(d) with respect to the KOROSEAL® trademark. *See J&J Sports Prods.*, 2008 WL 5083149, at *1.

Accordingly, ProFusion's motion for default judgment on its second claim for relief pursuant to 15 U.S.C. § 1125(d) is denied.

### 4. Trademark Dilution—15 U.S.C. § 1125(c)

Plaintiff's second claim for relief for cybersquatting pursuant to 15 U.S.C. § 1125(d) appears to also contain allegations that Chem-Tek's use of the www.korosealliners.com domain name dilutes the KOROSEAL® trademark. (*See* Compl. ¶¶ 36, 38.) Cybersquatting and trademark dilution are two entirely different claims. Dilution claims are governed by 15 U.S.C. § 1125(c).

As an initial matter, no claim for relief on the face of the complaint has been asserted pursuant to 15 U.S.C. § 1125(c). Moreover, § 1125(c) provides in pertinent part that:

**(c) Dilution by blurring; dilution by tarnishment**

**(1) Injunctive relief**

Subject to the principles of equity, the *owner* of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (emphasis added).

The dilution statute protects only the trademark *owner*. *See I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998). As discussed above, however, there may be some instances where a license is tantamount to an assignment and/or the licensee has the right to enforce the owner's rights in the trademark, and thus has standing to bring an action for dilution. *See Rimowa Distribution, Inc. v. Travelers Club Luggage, Inc.*, No. CV 15-10330-RGS, 2016 WL 6647928, at *3 (D. Mass. Nov. 8, 2016); *ICEE Distrib., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598–99 (5th Cir. 2003) (ultimate control and ownership of trademark remained with

trademark owner, and distributor agreement did not explicitly exclude owner from using mark in distributor's territory, thus distributor lacked standing to sue under 15 U.S.C. § 1115(c)).

That said, for the same reasons that the facts in the complaint (which are deemed admitted) do not establish that plaintiff has standing to pursue a claim against defendant pursuant to 15 U.S.C. § 1125(d) with respect to the KOROSEAL® trademark, plaintiff also lacks standing to pursue a claim for trademark dilution pursuant to 15 U.S.C. § 1125(c).

Thus, to the extent that the complaint asserts a claim for trademark dilution, and to the extent that the motion seeks default judgment on such a claim, the motion for default judgment is denied.

**B. Default Judgment—Damages**

Plaintiff seeks the following relief on default judgment:

(1) for injunctive relief on its claim for trademark infringement under 15 U.S.C. § 1125(a); (2) for statutory damages under its claim for violation of the Lanham Act under 15 U.S.C. § 1125(d)(1); (3) to forfeit and transfer to ProFusion the domain name www.korosealliners.com; and (4) for costs of this action, as well as prejudgment and post judgment interest.

(Mot. at 56.)

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages. *Ford Motor Co.*, 441 F.Supp.2d at 846 (citing *Visioneering Constr.*, 661 F.2d at 124); *Nat'l Satellite Sports, Inc. v. Mosley Entm't Inc.*, No. 01-CV-74510-DT, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) (the allegations of the complaint regarding the amount of damages are not controlling). Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009)). The Court

may rely on affidavits submitted by plaintiff in support of damages without the need for a hearing. *Id.* at *2 (citation omitted). Plaintiff has not submitted an affidavit or other evidence in support of its claim to damages.

**1. Injunctive relief for violating 15 U.S.C. § 1125(a)**

The Lanham Act authorizes a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a); *Ford Motor Co.*, 441 F. Supp. 2d at 852 (citing 15 U.S.C. §§ 1116 and 1125(c)(2)).

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

15 U.S.C. § 1116(a).

To obtain a permanent injunction, plaintiff must show that: (1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG,* 469 F.3d at 550 (citing *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)). An evidentiary hearing is not required prior to issuing a permanent injunction in the case of a default judgment because there are no factual issues in dispute. *Chanel v. Huang Cong,* No. 10–2086, 2011 WL 6180029, at *9 (W.D. Tenn. Dec. 8, 2011) (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,* 423 F.3d 539, 546 (6th Cir. 2005)); *Jobete Music Co., Inc. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077, 1092 (S.D. Ohio 2003) ("The Court may issue a permanent injunction without an evidentiary hearing when no triable issues of fact are

involved.") (citing *United States v. McGee,* 714 F.2d 607, 613 (6th Cir. 1983) and *United States v. Miami Univ.,* 294 F.3d 797, 815 (6th Cir. 2002)). The decision whether to grant a permanent injunction lies within the sound discretion of the Court. *List v. Ohio Elections Comm'n,* 45 F. Supp. 3d 765, 773 (S.D. Ohio 2014) (citation omitted).

In this case, defendant's liability has been established under 15 U.S.C. § 1125(a) by the facts in the complaint, all of which are deemed admitted. Those facts establish that defendant's use of the KOROSEAL® trademark has caused consumer confusion regarding the source and quality of Chem-Tek's products, and damaged ProFusion's goodwill and reputation, thus resulting in irreparable harm. *See Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir. 1999) (irreparable injury that cannot be remedied by money damages follows from the likelihood of consumer confusion and risk to plaintiff's reputation) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 608 (6th Cir. 1991)); *End Prod. Results, LLC v. Dental USA, Inc.*, No. 12-11546, 2014 WL 897363, at *6 (E.D. Mich. Mar. 6, 2014) ("[T]he Sixth Circuit 'requires no particular finding of its likelihood to support injunctive relief in case of this type, for irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement....'") (quoting *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377, 381–82 (6th Cir. 2006) (citations and quotation marks omitted)). Moreover, where there is potential for future harm from the Lanham Act violation, there is no adequate remedy at law. *See Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, No. 1:10CV979, 2013 WL 821233, at *2 (N.D. Ohio Mar. 4, 2013) (citing *Audi AG,* 469 F.3d at 550).

It is in the public interest to enforce federal trademark laws and to prevent consumers from being misled regarding the source and origin of products purchased from defendant. *Chanel, Inc. v. Jermaine Wrice*, No. 5:13-CV-891, 2015 WL 521144, at *9 (N.D. Ohio Feb. 9,

2015); *see also Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.*, 542 F. Supp. 2d 769, 781 (N.D. Ohio 2008) (it is "virtually axiomatic" that the public interest is served by enforcing the protections Congress has granted to owners of service marks) (citation omitted)). Finally, defendant faces no hardship as a consequence of being enjoined from violating the Lanham Act. Plaintiff, on the other hand, will continue to suffer from lost income and damage to its reputation and goodwill if defendant is not permanently enjoined from its illegal conduct with respect to the KOROSEAL® trademark. *See Future Lawn,* 542 F. Supp. 2d at 781.

Thus, the Court concludes that the balance of these considerations weighs in favor of granting a permanent injunction, and injunctive relief is appropriate to prevent the defendant from continuing to violate 15 U.S.C. § 1125(a) with respect to the KOROSEAL® trademark. *See Audi AG*, 469 F.3d at 550.

**2. Scope of injunctive relief**

While the Court has concluded that a permanent injunction is an appropriate remedy for defendant's violation of 15 U.S.C. § 1125(a), the Court must determine the proper scope of that injunctive relief. *ProNational Ins. Co. v. Bagetta*, 347 F. Supp. 2d 469, 472 (E.D. Mich. 2004) (scope of an injunction depends upon the manner in which the plaintiff is harmed, the ways in which the harm can be avoided, the viability of the defendant's defenses, the burden that would be placed on the defendant and the potential effect upon lawful competition between the parties) (citing *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 130, 67 S. Ct. 1136, 91 L. Ed. 1386 (1947)).

For violation of 15 U.S.C. § 1125(a), plaintiff seeks to enjoin:

Chem-Tek and its affiliates, partners, representatives, servants, employees, attorneys and all persons in active concert, privity or participation with Chem-Tek from using the registered KOROSEAL® mark, or any other confusingly similar mark, and from otherwise infringing ProFusion's trademarks and/or trade names;

15

from competing unfairly with ProFusion; from falsely designating the origin of the Chem-Tek's goods and services; from diluting the distinctive quality of ProFusion's KOROSEAL® trademark; from engaging in deceptive trade practices; and from further engaging in unfair competition, and specifically:

(a) using in any manner ProFusion's registered KOROSEAL® trademark, any mark confusingly similar to ProFusion's registered KOROSEAL® trademark, or any other mark that so resembles ProFusion's KOROSEAL® trademark as to be likely to cause confusion, deception or mistake, in connection with the manufacture, sale, or offer for sale of products;

(b) committing any acts, including use of ProFusion's registered KOROSEAL® trademark, calculated to cause purchasers to believe that Chem-Tek's products and/or services are those sold under the control and supervision of ProFusion, or are sponsored, approved, or connected with ProFusion, are guaranteed by ProFusion, or are rendered under the control and supervision of ProFusion;

(c) further diluting and infringing ProFusion's registered KOROSEAL® trademark and damaging its goodwill;

(d) renewing registration of, using or trafficking in the www.korosealliners.com domain name;

(e) registering, using or trafficking in other Internet domain names that are dilutive or confusingly similar to ProFusion's registered KOROSEAL® trademark; and

(f) marketing Chem-Tek's products and services on third-party websites using ProFusion's KOROSEAL® trademark.

(Doc. No. 9-1 at 58-59.)

It is unclear why plaintiff proposes language for a permanent injunction with respect to trademark dilution in connection with the injunctive relief sought for defendant's violation of 15 U.S.C. § 1125(a). First, trademark dilution (15 U.S.C. § 1125(c)) is an entirely distinct claim from unfair competition (15 U.S.C. § 1125(a)), and plaintiff has not asserted a claim pursuant to 15 U.S.C. § 1125(c). However, even if the complaint does assert a claim for trademark dilution, the Court has concluded that plaintiff is not entitled to default judgment on such claim. Thus, plaintiff is not entitled to any relief with respect to any claim for trademark dilution.

16

In addition, certain portions of plaintiff's proposed injunctive relief appear to be related to its cybersquatting claim pursuant to 15 U.S.C. § 1125(d). Because the Court has denied plaintiff's motion for default judgment on its second claim for relief, plaintiff is also not entitled to injunctive relief on that claim.

The Court, however, grants the following injunctive relief on plaintiff's default judgment with respect to 15 U.S.C. § 1125(a):[6]

> Chem-Tek and its affiliates, partners, representatives, servants, employees, attorneys and all persons in active concert, privity or participation with Chem-Tek, are permanently enjoined from using the registered KOROSEAL® mark, or any other confusingly similar mark, and from otherwise competing unfairly with ProFusion; from falsely designating the origin of the Chem-Tek's goods and services; from engaging in deceptive trade practices; and from further engaging in unfair competition, and specifically:
>
> (a) using in any manner the registered KOROSEAL® trademark, any mark confusingly similar to the KOROSEAL® trademark, or any other mark that so resembles the KOROSEAL® trademark as to be likely to cause confusion, deception or mistake, in connection with the manufacture, sale, or offer for sale of products, including on third-party websites; and
>
> (b) committing any acts, including using the registered KOROSEAL® trademark, calculated to cause purchasers to believe that Chem-Tek's products and/or services are those sold under the control and supervision of ProFusion, or are sponsored, approved, or connected with ProFusion, are guaranteed by ProFusion, or are rendered under the control and supervision of ProFusion, including on third-party websites.

---

[6] Plaintiff's motion does not separately seek relief for violation of Ohio's Deceptive Trade Practices Act, but Ohio Rev. Code § 4165.03 provides for injunctive relief for violations of Ohio Rev. Code § 4165.02. In any event, however, the injunctive relief available would be the same as for Chem-Tek's violation of 15 U.S.C. § 1125(a).

### 3. Damages for violating 15 U.S.C. § 1125(d)

The damages sought by plaintiff with respect to the forfeiture and transfer of the domain name www.korosealliners.com is a remedy provided by § 1125(d)(1)(C)[7] for violation of § 1125(d)(1). Because the Court has denied ProFusion's motion for default judgment with respect to its second claim for relief, plaintiff is not entitled any damages, statutory or otherwise, with respect to that claim.

### 3. Attorneys' fees and costs

While plaintiff's complaint seeks the relief of attorney fees and costs, neither the motion for default judgment nor the proposed order of default judgment seeks attorney fees. Accordingly, there is no need to address whether the Court should exercise its discretion to award attorney fees in this case. *See* Ohio Rev. Code § 4165.03(B) (court may award attorney fees if defendants actions were willful); *see also ProNational*, 347 F. Supp. 2d at 473 (court may award reasonable attorney fees to the prevailing party in "exceptional cases" where defendants has violated 15 U.S.C. § 1125(a) or (d)) (citing 15 U.S.C. § 1117).

Plaintiff's motion for default judgment, however, does seek costs. (Mot. at 56; Doc. No. 9-1 at 60.) Having obtained a default judgment against Chem-Tek pursuant to § 1125(a), ProFusion is entitled to costs. 15 U.S.C. § 1117(a). Such costs, which are not defined by § 1117(a), have been limited by the courts to costs available under 28 U.S.C. § 1920. *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, No. 2:10-CV-00789, 2014 WL 5034643, at *10 (S.D. Ohio Oct. 8, 2014), *aff'd in part, vacated in part, rev'd in part on other grounds,* 796

---

[7] **(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

15 U.S.C. § 1125(d)(1)(C).

F.3d 576 (6th Cir. 2015), *reh'g denied* (Sept. 14, 2015) (citing *Audi AG v. D'Amato,* No. 04–CV–70665, 2007 WL 313537, at *3 (E.D. Mich. Jan. 30, 2007) (citing *Powerhouse Marks LLC v. Chi Hsin Impex, Inc.* 463 F. Supp. 2d 733 (E.D. Mich. 2006))).

Accordingly, ProFusion is awarded costs available to it under 28 U.S.C. § 1920.

### III. CONCLUSION

For the reasons contained herein, plaintiff's motion for default judgment is granted in part and denied in part. Plaintiff's motion is granted with respect to its first and third claim for relief pursuant to 15 U.S.C. § 1125(a) and Ohio Rev. Code § 4165.01 *et seq.*, respectively. Defendant is permanently restrained and enjoined from engaging in unfair competition and deceptive trade practices, as outlined above. A permanent injunction order will be separately published.

Costs are awarded to plaintiff pursuant to 15 U.S.C. § 1117(a) and 28 U.S.C. § 1920.

Plaintiff's motion is denied with respect to its second claim for relief pursuant to 15 U.S.C. § 1125(d). Plaintiff is granted leave until December 23, 2016 to show cause why plaintiff's second claim for relief should not be dismissed.

**IT IS SO ORDERED**.

Dated: December 9, 2016

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**